PETERS *alias* ROBINSON *vs.* THE STATE OF GEORGIA.

1. The verdict in this case is amply supported by the evidence.
2. To charge that if certain facts, sought to be shown by the State, are true, the jury might consider such facts in making up their verdict, is not error of which the defendant can complain.

Criminal law. Verdict. Charge of Court. Before Judge LAWSON. Putnam Superior Court. March Term, 1881.

Reported in the decison.

W. F. JENKINS; H. A. JENKINS; HARRISON & PEE-PLES, for plaintiff in error.

CLIFFORD ANDERSON, attorney general; ROBERT WHITFIELD, solicitor general; J. H. LUMPKIN, for the state.

CRAWFORD, Justice.

Julia Ann Peters, the plaintiff in error, was indicted, tried and found guilty of the murder of her infant child.

She moved for a new trial upon the ground, first: That the verdict was against the evidence, without evidence and because it was contrary to law.

This ground of the motion makes it necesary to examine the testimony, and to ascertain whether the jury have been so unmindful of their oaths, and so regardless of the rights of this defendant as to find a verdict without evi-

dence, and also, to see whether the judge committed error in allowing that verdict to stand by refusing a new trial. . It appears that the defendant, Julia Ann Peters, who was very far advanced in pregnancy on the 27th of February, 1881, complained of being in very great pain, but declined to tell what was the matter. She ate no dinner, but asked for and was given some ginger tea; when the sun was some four hours high she was seen to leave her house and go in the direction of a thicket, which was about one hundred and fifty yards away; one hour or so after this she was seen returning, and when she reached the door of her house she was unable at first to go in; after entering she went behind the door and changed her clothing. She was in great pain and flooding very badly—she could not conceal it. She was in a great hurry to get away from the place, and procured the help of another girl to aid her. She said nothing of her condition to her employer or his father, both of whom were present with her upon her return to the house from the woods. So soon as she left for her own home, which occurred as soon as she well could, they took the tracks that she had previously made, and followed them through the field to where she crossed the fence towards the thicket, and after some little search they found a new born infant in a gully about six feet deep. The gully, at the bottom, was about the size of a wash tub and five or six inches deep in water; the infants head was caught by a root which prevented its going under the water, the child was found in fifteen or twenty minutes after the prisoner had gone. There were some bruises on the head and hips, and bloody water came out of its mouth; the child moved its limbs after it was carried to the house, but died about 11 o'clock that night. The prisoner acknowledged that the child was hers upon the trial, and said that she left it on the side of the gully thinking that it was dead.

When the foregoing facts are considered, it is impossible to have any reasonable doubt about the fact, that this

unnatural mother dropped that child into that place, of the depth of six feet, with a pool of water at the bottom with the felonious intent to kill it.   The proof shows that she did not get down to see how deep that water was. And it would be no easy task for one grown to lift herself out of a gully six feet deep and only the size of a washing tub in diameter at the bottom.   It is to be remembered, too, that it was in the last days of February, when the snows and ices of January had scarcely melted away.   But it is argued that she thought it dead.   If it had been, and its death natural, then she would not have left it there, but would have taken it to the house, or at least said something of it.   And if really dead, then she would not have left it on the side of that gully,  That spot had doubtless been selected before · that day, and its secrecy, its depth, and its watery contents, kept her from accepting the offer of her employer to ride home on the morning of that day when she first complained of being sick, that she might utilize it as she did.

The jury have said that the defendant was guilty ; they are the chosen judges of the law to decide upon the guilt or innocence of parties charged with crime ; and it should be a clear case of the want of evidence, to justify this court in assuming the province of the jury, and in setting aside their solemn finding upon this ground.

2. Another ground of error assigned· is the following charge of the court :

"You will inquire whether she knew she was pregnant, whether other people knew she was pregnant.   Enquire whether she had symptoms of labor, whether she went to a retired place, whether she was delivered of a child, whether it was born dead or alive, whether she knew its condition, that is, whether it was dead or alive.   Inquire whether other people were able to tell whether it was dead or alive, whether she abandoned or left it exposed to the cold, or otherwise acted in an unnatural manner.

" Inquire whether she disclosed the birth of the child,

or concealed its birth.   You will inquire whether she had any motive to conceal her shame resulting from the birth of the child, or desired to be relieved of its support or maintenance.   These are the allegations of the State, and it is for you to determine whether they be true.   If you find, after a careful inquiry that they are true, then they would be proper facts and circumstances to consider in making up your verdict."

Waiving any objection to this ground of error for the want of a more definite and proper specification thereof, we hold that to instruct the jury if certain facts alleged to be true are found to be so by proof, then, that they may be considered in making up a verdict, is not error.

If it be a hard case that one charged and convicted of this character of offense should suffer the present penalty of the law, the relief is not with the courts but the legis-lature.   The judgment must be affirmed.

Judgment affirmed.